UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL JAMES REPNICKE,

      Plaintiff,

  v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

No. 2:16-cv-1225 DB

ORDER

This social security action was submitted to the court without oral argument for ruling on

plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1]

Plaintiff argues that the Administrative Law Judge's treatment of the Vocational Expert's

testimony constituted harmful error. For the reasons explained below, plaintiff's motion is

denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social

Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On August 17, 2012, plaintiff filed an application for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act ("the Act"), alleging disability beginning on

_____

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action
pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 8 & 10.)

1

June 1, 2001.  (Transcript ("Tr") at 10.)  Plaintiff's application was denied initially, (id. at 150-

53), and upon reconsideration.  (Id. at 162-66.)  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ)", and on November 25, 2014, plaintiff appeared at an

administrative hearing before an ALJ.  (Id. at 66-98.)  Plaintiff was represented by an attorney

and testified at the administrative hearing.[2]  (Id. at 66-67.)

On December 19, 2014, the ALJ issued a decision finding that plaintiff was not disabled

under the Act.  (Id. at 21.)  The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity
> since August 17, 2012, the application date (20 CFR 416.971 *et
> seq.*).
>
> 2.  The claimant has the following severe impairments: history of
> paroxysmal supraventricular tachycardia, lumbar degenerative disc
> disease, cervical degenerative disc disease, right should strain,
> asthma, blindness in right eye, bipolar disorder, tobacco abuse, and
> alcohol abuse in remission (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
> (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform a range of
> light work.  He can lift and carry 20 pounds occasionally and ten
> pounds frequently.  He is able to sit, stand, and/or walk 6 to eight
> hours each in an eight-hour day.  He can occasionally climb,
> balance, stoop, kneel, crouch, and crawl.  He is unable to reach
> overhead with the right upper extremity.  He may have difficulty
> with discrimination of small objects at a distance and with jobs
> requiring binocular vision.  He must avoid even moderate exposure
> to heights and dangerous machinery, but he can occasionally work
> on uneven terrain.  Mentally, he can perform no more than simple,
> routine tasks (20 CFR 416.967(b)).
>
> 5.  The claimant has no past relevant work (20 CFR 416.965).
>
> 6.  The claimant was born on August 30, 1968 and was 43 years
> old, which is defined as a younger individual age 18-49, on the date
> the application was filed (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to
> communicate in English (20 CFR 416.964).

////

---

[2]  Plaintiff appeared at the hearing telephonically.  (Tr. at 10, 74.)

1    8. Transferability of job skills is not an issue because the claimant
     does not have past relevant work (20 CFR 416.968).
2
     9. Considering the claimant's age, education, work experience, and
3    residual functional capacity, there are jobs that exist in significant
     numbers in the national economy that the claimant can perform (20
4    CFR 416.969 and 416.969(a)).

5    10. The claimant has not been under a disability, as defined in the
     Social Security Act, since August 17, 2012, the date the application
6    was filed (20 CFR 416.920(g)).

7    (Id. at 13-20.)

8        On April 4, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's

9    December 19, 2014 decision.  (Id. at 2-4.)  Plaintiff sought judicial review pursuant to 42 U.S.C.

10   § 405(g) by filing the complaint in this action on June 4, 2016.  (ECF No. 1.)

11                                    LEGAL STANDARD

12       "The district court reviews the Commissioner's final decision for substantial evidence,

13   and the Commissioner's decision will be disturbed only if it is not supported by substantial

14   evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

15   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

16   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

17   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

18       "[A] reviewing court must consider the entire record as a whole and may not affirm

19   simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

20   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

21   1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

22   reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d

23   1072, 1075 (9th Cir. 2002).

24       A five-step evaluation process is used to determine whether a claimant is disabled. 20

25   C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

26   process has been summarized as follows:

27       Step one:  Is the claimant engaging in substantial gainful activity?
         If so, the claimant is found not disabled.  If not, proceed to step
28       two.

                                         3

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

Plaintiff's pending motion asserts that the ALJ erred by relying on testimony from the Vocational Expert that conflicted with the information found in the Dictionary of Occupational Titles without eliciting an explanation from the Vocational Expert for that conflict. (Pl.'s MSJ (ECF No. 15) at 5-8.[3]) In this regard, at step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles ("DOT"). Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007); see also SSR 00-4p,

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2000 WL 1898704, at *2 (Dec. 4, 2000). Where a conflict exists, an "ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." Massachi, 486 F.3d at 1153.

Here, the ALJ asked the VE if his testimony was consistent with the DOT and the VE answered that it was. (Tr. at 96.) When asked to assume a hypothetical person limited to plaintiff's residual functional capacity, the VE answered that such a person could still perform the jobs of Palletizer, DOT # 929.687-054, Garment Sorter, DOT # 222.687-014, and Packer Operator, DOT # 920.685-082. (Id. at 94-95.) Plaintiff argues, however, that this testimony by the VE conflicted with the DOT in several respects.

First, plaintiff argues that the DOT provides that the job of Palletizer requires "occasional exposure to moving mechanical parts hazard."[4] (Pl.'s MSJ (ECF No. 15) at 5.) And plaintiff is correct. See DICOT 929.687-054. There is, however, no conflict between the VE's testimony and the DOT.

In this regard, the VE was asked to assume a hypothetical person limited to "moderate exposure to . . . dangerous machinery . . . ." (Tr. at 94.) There is no apparent conflict between someone who is limited to moderate exposure to dangerous machinery being occasionally exposed to moving mechanical parts. See generally Kinman v. Astrue, No. 1:06cv1626 DLB, 2008 WL 686593, at *12 (E.D. Cal. Mar. 12, 2008) ("exposure to hazards on an 'occasional' basis is not necessarily inconsistent with the ALJ's finding that Plaintiff needed to avoid 'moderate' exposure").

////

---

[4] According to the VE there were 46,883 people employed in California as a Palletizer, 22,316 as a Garment Sorter, and 21,673 as a Packer Operator. (Tr. at 94-95.) In this regard, plaintiff must show that the ALJ erred with respect to each of the three jobs identified in order for the court to find a harmful error. See Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 528 (9th Cir. 2014) ("we affirm the ALJ's decision that 2,500 jobs constituted significant work in the region of California"); Gallo v. Commissioner of Social Sec. Admin., 449 Fed. Appx. 648, 650 (9th Cir. 2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the Addresser job, any error that the ALJ may have committed by relying on the testimony about the 'credit checker' job was harmless.").

5

1    Second, plaintiff argues that the VE testified that someone having "difficulty with

2    discriminating small objects at a distance," could perform the job of Garment Sorter, despite the

3    fact that the ALJ never defined "what she meant by *distance*" and the DOT provides that the job

4    of Garment Sorter requires "near acuity," meaning "clarity of vision at 20 inches or less . . . ."

5    (Pl.'s MSJ (ECF No. 15) at 6) (emphasis in original).  Moreover, plaintiff argues that because the

6    DOT describes the occupation of Garment Sorter as requiring "frequent visual accommodation,"

7    the ALJ erred by not specifying "the ability to engage in visual accommodation but did state the

8    difficulty with small objects at a distance."  (Id.)

9    　　　Plaintiff's argument is without merit.  In this regard, the VE's testimony concerned

10   someone having "difficulty with discriminating small objects at a distance . . . ."  (Tr. at 95.)

11   While the phrase "at a distance" may be open to interpretation, under no reasonable interpretation

12   could it mean objects within 20 inches.

13   　　　Moreover, as plaintiff's motion acknowledges, visual accommodation concerns "the

14   adjustment of the lens of the eye to bring an object into sharp focus when doing *near* point work

15   at varying distances from the eye."  (Pl.'s MSJ (ECF No. 15) at 6) (emphasis added).  The ALJ's

16   hypothetical concerned a limitation with respect to objects at a distance.  Thus, there was no

17   conflict between the VE's testimony and the DOT with respect to this issue.

18   　　　Plaintiff also argues that the VE did not explain how a person having difficulty with jobs

19   requiring binocular vision could do the job of Packer Operator, even though the DOT states that

20   the job of Packer Operator requires "frequent near acuity and frequent depth perception . . . ."

21   (Id. at 7.)  However, "[f]or a difference between an expert's testimony and the Dictionary's

22   listings to be fairly characterized as a conflict, it must be obvious or apparent."  Gutierrez v.

23   Colvin, 844 F.3d 804, 808 (9th Cir. 2016).  Here, it is not obvious or apparent that having

24   difficulty with jobs requiring binocular vision precludes work requiring frequent depth

25   perception.  See Townsend v. Colvin, No. EDCV 12-2023 AGR, 2013 WL 5522048, at *3 (C.D.

26   Cal. Oct. 3, 2013) ("Because the ALJ did not impose a limitation on near acuity or depth

27   perception and the record does not establish such limitations, Townsend has not demonstrated an

28   actual or apparent conflict between the VE's testimony and the DOT with respect to visual

1    limitations.").

2         Finally, plaintiff argues that the VE testified that someone who is unable to reach

3    overhead with the right upper extremity could do the jobs of Palletizer, Garment Sorter, and

4    Packer Operator despite the fact that the DOT states that those jobs require frequent reaching.

5    (Pl.'s MSJ (ECF No. 15) at 7-9.)

6         "To avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some

7    detail why there is no conflict between the DOT and the applicant's RFC." Lamear v. Berryhill, -

8    -- F.3d ---, 2017 WL 3254930, at *3 (9th Cir. Aug. 1, 2017).  As noted above, however, "[f]or a

9    difference between an expert's testimony and the Dictionary's listings to be fairly characterized

10   as a conflict, it must be obvious or apparent." Gutierrez, 844 F.3d at 808.  A conflict is obvious

11   or apparent where the VE's testimony is "at odds with the Dictionary's listing of job requirements

12   that are essential, integral, or expected." Id.

13        "While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,'

14   not every job that involves reaching requires the ability to reach overhead." Id. (quoting SSR 85-

15   15, 1985 WL 56857, at *7 (1985)).  Here, the DOT describes the job of Palletizer as follows:

16                    Secures battens (grooved strips of wood) around bundles of
                      packaged metal extrusions to form protective shipping pallets, using
17                    strapping tool: Presses conveyor controls to position packaged
                      extrusions under strapping tool. Measures dimensions of bundles,
18                    using ruler, and cuts battens to required size, using power saw.
                      Positions battens, cardboard strips, and metal or plastic strapping
19                    around bundles in specified fashion, according to written
                      instructions. Threads strapping through strapping tool and secures
20                    battens with strapping, using strapping tool, to form protective
                      pallet around extrusions. Removes palletized bundles from
21                    conveyor for further processing, using pneumatic hoist.

22   DICOT 929.687-054.  Nothing in this job description suggests that it is likely that a Palletizer

23   would have to reach overhead with one, let alone both, arms. Cf. Lamear, 2017 WL 3254930, at

24   *3 (finding error where DOT's description "strongly suggest that it is likely and foreseeable that

25   using both hands would be necessary to perform 'essential, integral, or expected' tasks in an

26   acceptable and efficient manner").

27        Similarly, the job of a Garment Sorter requires only the sorting of "finished garments,"

28   and possibly the ironing, folding and/or packaging of garments.  DICOT 222.687-014.  Again,

7

there is no reason to believe that a Garment Sorter would have to reach overhead with one or both

arms.  The same can be said of the job of Packer Operator, which involves the tending of a

packing machine and press, the positioning of empty containers, the pushing of buttons,

observing lights, reading scales, raising a ram and charger, and removing full containers.  DICOT

920.685-082.

"The requirement for an ALJ to ask follow up questions is fact-dependent."  Gutierrez,

844 F.3d at 808.  Because it appears unlikely that the jobs identified by the VE here require

overhead reaching, let alone bilateral overhead reaching, there was no conflict between the VE's

testimony and the DOT.  See generally id. ("Given how uncommon it is for most cashiers to have

to reach overhead, we conclude that there was no apparent or obvious conflict between the

expert's testimony and the Dictionary.").

Accordingly, plaintiff is not entitled to summary judgment on his claim that the ALJ relied

on VE testimony which conflicted with the DOT.

CONCLUSION

The court has found that plaintiff is not entitled to summary judgment on plaintiff's sole

claim of error.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2.  Defendant's cross-motion for summary judgment (ECF No. 16) is granted;

3.  The decision of the Commissioner of Social Security is affirmed; and

4.  The Clerk of the Court shall enter judgment for defendant and close this case.

Dated:  August 17, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6

8

1   DB\orders\orders.soc sec\repnicke1225.ord